ELIZABETH GOLDSTEIN

v.

SALLY GOLDSTEIN.

</div>

1. TRUST FUND—AGENCY.—Where a person holding money in trust as guardian, placed such money in the business of another for whom he was acting as agent, and almost immediately thereafter drew it out of such business, his principal can not be made liable for the sum in an action by a succeeding guardian.

2. MISAPPROPRIATION OF TRUST FUNDS—NOTICE TO PARTY RECEIVING THEM.—A party receiving money that has been misappropriated by a trustee, must have received the same with notice of its trust character, or he will not be liable therefor.

3. ACTION AT LAW—REMEDY IN EQUITY.—Where a guardian took the funds of his wards, and used them in the business of another, for whom he

was acting as agent, and afterward withdrew them from such business, a succeeding guardian can not recover such funds from the principal, in whose business they were invested, in an action at law for money had and received, but relief should be sought by a proceeding in chancery.

ERROR to the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding. Opinion filed October 26, 1882.

Messrs. MOSES & NEWMAN, for appellant; that the finding of the Appellate Court as to controverted facts is conclusive, cited Bridge Co. v. Com'rs, 101 Ill. 520; St. L. Nat. S. Y. Co. v. Wiggins Ferry Co. 102 Ill. 514.

An authority to buy and sell goods does not extend to borrowing money: Gilbraith v. Lineberger, 69 N. C. 145; Mec. Bank v. Bank of Columbia, 5 Wheat. 338; Union Bank v. Mott, 39 Barb. 180.

In drawing the checks in question the guardian was not acting as the agent of plaintiff in error: Cent. Nat. Bank v. Royal Ins. Co. 2 Morrison's transcript, U. S. Sup. Ct. 316; Mfrs. Nat. Bank v. Barnes, 65 Ill. 70; Weiser v. Denison, 10 N. Y. 68; Wharton on Agency, § 129; Story on Agency, 124; Mowhurst v. Boies, 24 Iowa, 99.

Generally as to what comes within the scope of an agent's authority: Parsons on Notes, 106; Kerns v. Piper, 4 Watts, 222; Dorsey v. Abrams, 85 Pa. St. 299; Callender v. Golsan, 27 La. An. 311; Ewell's Evans on Agency, 239.

BAILEY, P. J.   This was an action of assumpsit, brought by Sally Goldstein, guardian of the estates of Emanuel Goldstein and others, infants, against Elizabeth Goldstein, to recover certain moneys of said wards, alleged to have been loaned to the defendant.   It appears that, at the time of the transactions out of which this controversy arose, Isadore Goldstein, the defendant's husband, was the guardian of said wards, and had in his hands $1,429.77, belonging to them, derived from a certain life insurance policy, said money being deposited in the International Bank of Chicago, to the credit of said Isadore Goldstein, as guardian.   The defendant then was and for some time prior thereto had been engaged in the business of

dealing in new and second hand furniture in Chicago, under the name of E. Goldstein & Co., and was also keeping a bank account in that name, at said International Bank. Said business was being carried on with capital derived by the defendant from her father's estate, her husband acting as her general agent and business manager, and having authority to deposit moneys to her credit in said bank, and to draw checks upon said bank in her name.

The evidence tends to show that said Isadore Goldstein, while acting both as guardian, and as the defendant's agent, drew out of said bank $1,050 of the money deposited to his credit as guardian, and deposited most, or all of it to the defendant's credit, or otherwise used it in her business. Said money was drawn from the bank by means of four checks, signed by Isadore Goldstein as guardian, payable to the order of E. Goldstein & Co., and indorsed " E. Goldstein & Co., per I. G." one for $450, dated September 24th, one for $200, dated October 6th, one for $100, dated October 30th, and the fourth for $300, dated November 1st, all in the year 1880. Shortly after these transactions, said Isadore Goldstein died, and the plaintiff was appointed guardian of said infants in his stead.

The defendant testifies that she had no knowledge whatever during the life-time of her husband, that he had used said money, or any portion of it in her business, or in fact, that he had used in her business any funds held by him in trust for his wards; and in this her evidence is not disputed.

After the death of Isadore Goldstein it was discovered that on the 1st day of November, 1880, he had drawn out of the defendant's account at the bank, the sum of $1,200, said draft having been made by means of a check drawn, payable to the order of E. Goldstein & Co., and signed " E. Goldstein & Co. per I. G."

There is no direct evidence as to what became of said $1,200 after it was drawn from the bank, but there are some circumstances disclosed by the evidence which, standing as they do, uncontradicted and unexplained, raise a fair presumption that Isadore Goldstein drew out said money and applied it to his

Goldstein v. Goldstein.

own use. The fact that the check was drawn by him payable to the order of a principal, in whose name he was authorized to draw money from the bank, raises a reasonable inference that the money drawn came into his possession or under his control. It further appears that the defendant commenced business in September, 1879, with a capital of $3,000. After continuing in business for a little more than one year, she sold out her entire stock in trade for $2,800. She testifies that in the course of her business she had suffered no losses, and in this she is not disputed, nor is there any evidence that the sale was not a fair one, and the price realized the full value of the property sold. If it be conceded then, that her husband put into her business $1,050, drawn from his account as guardian, the presumption is a reasonable one, that by drawing out the $1,200, he repossessed himself of that sum and $150 besides. If, then, the defendant's husband, after putting a portion of the trust funds in his hands into his wife's business, drew it out again almost immediately thereafter, we see no principle upon which the defendant ought now to be required to pay it again to her husband's wards, or their representatives.

But there is another reason why the defendant can not be held answerable for said money to the present plaintiff. She received it from her husband, and is liable therefor to him, or his representatives alone, unless it appears not only that it was a trust fund, but also that she received it, with either actual or constructive notice that such was its character.

It is a fundamental rule in equity that "a party taking with notice of an equity takes subject to that equity." Adams' Eq. 311. Mr. Story, discussing the same doctrine as applied to the administration of estates says: "Whenever there is a misapplication of the personal assets, and the assets or their proceeds can be traced into the hands of any person affected with notice of such misapplication, there the trust will attach upon the property or proceeds in the hands of such persons, whatever may have been the extent of such misapplication or conversion." 1 Story's Eq. Juris. § 581. So in Colt v. Lasnier, 9 Cow. 320, quoted and approved by the Supreme Court of the

United States, in Smith v. Ayer, 101 U. S. 320, it is held, "That any person receiving from an executor, the assets of his testator, knowing that this disposition of them is in violation of his duty, is to be adjudged as conniving with the executor, and that such person is responsible for the property thus received, either as purchaser or pledgee." In School Trustees v. Kirwin, 25 Ill. 73, Breese, J., says: "If the cases on this subject are adverted to, it will be found that trusts are enforced, not only against those persons who are rightfully possessed of trust property, as trustees, but also against all persons who come into possession of the property bound by the trust, with notice of the trust, and whoever so comes into possession, is considered as bound, with respect to that special property, to the execution of the trust." See, also, Van Hoose v. Bush, 54 Ala. 342; Thomasson v. Brown, 43 Ind. 203; Field v. Schieffelin, 7 Johns. Ch. 150; Petrie v. Clark, 11 Serg. & Rawle, 377; Allen v. Stenger, 74 Ill. 119; 3 Redf. on Wills, 228, note.

Under the doctrine laid down in these and numerous other cases to which reference might be made, it is clear that the defendant can be charged with the money in question, as a trust fund, and held liable to pay it over to the present representative of the *cestuis que trust*, only upon proof that she received it with notice of its trust character, and the question arises whether, under the evidence in this case, she is chargeable with such notice. This question, we think, must be answered in the negative.

No attempt is made to charge her with actual notice, and her testimony shows affirmatively that she was entirely ignorant, both of the fact that this money was put into her business, and of its character as being a trust fund. Was she chargeable, then, with constructive notice? It is doubtless the rule that a principal is chargeable with notice of all acts performed by his agent, within the scope of his agency, but where the agent ceases to act as such and becomes himself a principal, and undertakes to deal with his employer in that character, notice of his acts can no longer be imputed to his principal.

Goldstein v. Goldstein.

Akin to this rule is the one which charges a principal with notice of all facts pertaining to the subject-matter of the agency, which come to the knowledge of the agent while acting within the scope of his employment.    Upon general principles of public policy, it is presumed that the agent has communicated such facts to his principal.    Story on Agency, § 140.    But this presumption can not prevail as to facts coming to the knowledge of the agent while acting independently of his principal.    He is under no legal duty to communicate such facts to his principal, and the law will indulge in no presumption that he has done so.

In this case, while it is true that the defendant's husband was her general agent in the management of her business, and that he was authorized to deposit money in the bank and draw the same out in her name, there is no evidence that he was authorized to borrow money to be used in the business, and to pledge her credit therefor, nor would such authority be inferable from the nature of his employment.    But a more serious difficulty grows out of the fact that, in putting the money in question into the defendant's business, he was acting as one of the principals to the transaction, and could not therefore act as the agent of the other principal in the same matter.    He could not at the same time be the lender and the agent of the borrower.    In passing upon the rights and liabilities of the defendant, therefore, so far at least as the question of notice is concerned, her husband must be treated, not as her agent borrowing money for her from another, but as the lender, voluntarily and without her permission or concurrence, putting his money into her business, and intermingling his funds with hers.    Under these circumstances, there is no presumption that his acts were communicated to her, and she can not be chargeable with notice either of what he did, or of what was within his knowledge at the time.

But even if the defendant could be held chargeable with notice of the foregoing facts, we are inclined to the opinion that the plaintiff can not recover at law in an action for money had and received, but that her remedy, if she has any, is by bill in equity.    Her right to recover is not based so much upon the

identity of the particular money which she is able to trace into the hands of the defendant, as upon the state of the accounts of the deceased guardian. He was not bound to restore that identical money, but was at liberty to replace it with other money if he saw fit. Whether he did so in fact or not, can not be ascertained from the present record, as no proof whatever was offered as to the state of the deceased guardian's accounts. The case of Perley v. County of Muskegon, 32 Mich. 132, involves principles analogous to those above stated, and may be cited as an authority for the position here taken.

An inquiry into the state of the deceased guardian's accounts can not properly be made in the absence of his legal representatives, and it may further be remarked that the defendant, before she should be required to pay over the money put into her business by her husband, is entitled to have the question judicially determined, whether her liability is to the present guardian or to the representatives of her deceased husband. These considerations, we think, make the case one where relief can be properly administered only by a court of equity.

The jury found a verdict in favor of the plaintiff for $1,050, for which sum and costs judgment was rendered in her favor. For the reasons above set forth, the judgment will be reversed and the cause remanded.

Judgment reversed.